**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ACTION GROUP INTERNATIONAL, LLC,
a New Jersey limited liability company,

                     Plaintiff,

      v.                             Case No. 3:10-cv-2132

ABOUTGOLF LIMITED, an Ohio limited       Judge James G. Carr
liability company,

                     Defendant.

## DEFENDANT ABOUTGOLF LIMITED'S MOTION TO DISMISS

Defendant AboutGolf Limited ("AboutGolf"), by its attorneys Honigman Miller Schwartz and Cohn LLP and Wagoner & Steinberg, PLC, respectfully moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the complaint in its entirety with prejudice. Specifically, as set forth more fully in the attached brief in support of this motion, Defendant requests that the Court issue an order holding, among other things, that Plaintiff's complaint is barred by the express language of the parties' distribution agreement.

In support of its motion, Defendant offers the following brief.

WHEREFORE, Defendant respectfully requests that the Court (a) grant its motion; (b) dismiss the complaint with prejudice; and (c) grant any other appropriate relief.

/s/ Erica L. Keller
Nicholas B. Gorga, Esq. (admitted *pro hac vice*)
    ngorga@honigman.com
Erica L. Keller, Esq. (admitted *pro hac vice*)
    ekeller@honigman.com
HONIGMAN MILLER SCHWARTZ
  AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Phone:  (313) 465-7640
Fax:  (313) 465-8000


C. William Bair, Esq. (0015840)
    bairb@wagonersteinberg.com
Fan Zhang, Esq. (0070677)
    zhangf@wagonersteinberg.com
WAGONER & STEINBERG, PLC
7445 Airport Highway
Holland, OH  43528
Phone:  (419) 865-1251
Fax:  (419) 866-8798


Dated: November 1, 2010          ATTORNEYS FOR DEFENDANT

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ACTION GROUP INTERNATIONAL, LLC,
a New Jersey limited liability company,

                  Plaintiff,

      v.                                    Case No. 3:10-cv-2132

ABOUTGOLF LIMITED, an Ohio limited          Judge James G. Carr
liability company,

                  Defendant.

**<u>BRIEF IN SUPPORT OF DEFENDANT ABOUTGOLF LIMITED'S</u>**
**<u>MOTION TO DISMISS</u>**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ........................................................... v

SUMMARY OF ARGUMENT .................................................................................. vi

I.      INTRODUCTION ............................................................................................1

II.     STATEMENT OF FACTS ...............................................................................2

     A.     The Parties ...........................................................................................2

     B.     The Territorial Distributorship Agreement For April 6, 2010 – April 6, 2011....................................................................................................2

     C.     Exclusive Territory Provision Limits Action Group ..............................3

     D.     Action Group's Obligations As A Distributor .......................................4

     E.     AboutGolf's Right To Terminate The Agreement Early........................4

     F.     No Liability For Termination Of The Agreement ..................................5

     G.     Indemnification Only For Certain Warranty-Related Defects ................6

     H.     AboutGolf Terminates Action Group ....................................................6

     I.     Action Group Files Its Complaint..........................................................7

III.    ARGUMENT...................................................................................................8

     A.     The Complaint Must Be Dismissed Because Each Of Its Claims Is Barred By The Express Limitation Of Liability In The Agreement....................................8

     B.     Counts 1-4 & 6-8 Should Be Dismissed For Failure To State A Claim Under This Court's Stringent Pleading Standards .................................10

          1.     Pleading Standard Required To Survive A Motion To Dismiss...............11

          2.     Plaintiff Fails To State A Claim In Count 1 – Declaratory Judgment: Improper Termination Of Distributor Agreement...................12

          3.     Plaintiff Fails To State A Claim In Count 2 – Breach Of Contract: Infringement On Action Group's Exclusive Territory.............................13

4.      Plaintiff Fails To State A Claim In Count 3 – Breach Of Contract: Failure To Indemnify For Product Defects ................................................. 14

5.      Plaintiff's Claim Under Ohio's Deceptive Trade Practices Act (Count 4) Must Be Dismissed For Failure To State A Claim .................... 15

6.      Plaintiff Fails To State A Claim In Count 6 – Promissory Estoppel ......... 16

7.      Plaintiff Fails To State A Claim In Count 7 – Unjust Enrichment ........... 17

8.      Plaintiff Fails To State A Claim In Count 8 – Tortious Interference With Business Relationships ........................................................ 18

C.      Plaintiff's Fraud Claim (Count 5) Must Be Dismissed ........................................ 19

1.      Plaintiff Fails To Plead Any Recoverable Damages ................................ 19

2.      Representations About Future Actions Are Not Actionable .................... 20

IV.     CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

CASES

*A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,*
    73 Ohio St.3d 1 (1995).................................................................................................18

*Amara v. ATK, Inc.*,
    No. 3:08-cv-00378, 2009 WL 2730528 (S.D. Ohio Aug. 26, 2009) ......................................13

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)...............................................................................................*Passim*

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)..............................................................................................11,13

*Burr v. Bd. of Cty. Comm'rs of Stark Cty.*,
    23 Ohio St.3d 69 (1986).................................................................................................19

*Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*,
    706 F.2d 155 (6th Cir. 1983) ...........................................................................................9

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*,
    508 F.3d 327 (6th Cir. 2007) ...........................................................................................3

*Daup v. Tower Cellular, Inc.*,
    136 Ohio App.3d 555 (2000) ........................................................................................17

*Denson v. Crish*,
    No. 3:10CV1440, 2010 WL 3808013 (N.D. Ohio Sept. 27, 2010) ..................................2, 12

*Ferro Corp. v. Garrison Indus., Inc.*,
    142 F.3d 926 (6th Cir. 1998) ...........................................................................................9

*Frank v. University of Toledo*,
    621 F. Supp. 2d 475 (N.D. Ohio 2007).............................................................................17

*Gallant v. Toledo Pub. Sch.*,
    84 Ohio App.3d 378 (1992) ...........................................................................................17

*Gouge v. BAX Global, Inc.*,
    252 F. Supp. 2d 509 (N.D. Ohio 2003)............................................................................20

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) .........................................................................................11

*HER, Inc. v. RE/MAX First Choice, LLC*,
    468 F. Supp. 2d 964 (S.D. Ohio 2007) ...............................................................15

*Kincaid v. Erie Ins. Co.*,
    183 Ohio App.3d 748 (2009) ...............................................................................18

*Mafcote, Inc. v. Genatt Assoc., Inc.*,
    No. 104-CV-853, 2007 WL 527870 (S.D. Ohio Feb. 14, 2007) ..........................16

*Patrick v. Painesville Commercial Properties, Inc.*,
    123 Ohio App.3d 575 (1997) ...............................................................................16

*Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*,
    491 F.3d 522 (6th Cir. 2007) ...............................................................................19

*The Diamond Co. v. Gentry Acquisition Corp.*,
    48 Ohio Misc.2d 1 (1998) .....................................................................................16

*Tibbs v. National Homes Constr. Corp.*,
    52 Ohio App.2d 281 (1977) ..................................................................................20

*Univ. Hosps. of Cleveland, Inc. v. Lynch*,
    96 Ohio St.3d 118, 130 (2002) .............................................................................18

*Wilkey v. Hull*,
    366 Fed.Appx. 634 (6th Cir. 2010) .......................................................................19

*Woods v. Willis*,
    No. 3:09CV2412, 2010 WL 3808279 (N.D. Ohio Sept. 27, 2010) .......................11

*Yocono's Restaurant, Inc. v. Yocono*,
    100 Ohio App.3d 11 (1994) ..................................................................................15

*Younglove Const., LLC v. PSD Development, LLC*,
    No. 3:10-cv-1602, 2010 WL 3515603 (N.D. Ohio Sept. 3, 2010) .........................18

**STATUTES**

O.R.C. § 4165.01, *et seq.* ................................................................................................15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................2, 8, 11

Fed. R. Civ. P. 8 ..................................................................................................................12

Fed. R. Civ. P. 9(b) ........................................................................................................8, 19

## STATEMENT OF ISSUES TO BE DECIDED

1)  Whether Plaintiff's complaint for damages and other relief arising from its allegedly improper termination should be dismissed where the parties expressly agreed in their distribution agreement that AboutGolf Limited ("AboutGolf") "shall not be liable for ***any claim of any kind arising from…termination or non-renewal of this Agreement***"  (Compl. at Ex. C ¶ 16) and that neither party shall be liable to one another for any reason "whatsoever growing out of such termination" (*id.* at ¶ 20)?

Defendant AboutGolf answers "yes."

2)  Whether Plaintiff's complaint should be dismissed because it alleges only damages that are expressly barred by the parties' distribution agreement, which states that AboutGolf shall not be liable for any claim arising from "indirect, incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property?"

Defendant AboutGolf answers "yes."

3)  Whether Plaintiff's complaint should be dismissed because Plaintiff fails to properly plead its claims with the required factual support demanded by *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)?

Defendant AboutGolf answers "yes."

4)  Whether Plaintiff's complaint fails to state a claim for fraud because a) Plaintiff's claim is based upon representations about future developments in AboutGolf's products, which are statements of future performance and not actionable as a matter of law and b) Plaintiff fails to allege any recoverable damages, which is a required element of fraud?

Defendant AboutGolf answers "yes."

## <u>SUMMARY OF ARGUMENT</u>

First, Plaintiff's complaint must be dismissed because it seeks damages arising out of the allegedly improper termination of Plaintiff.  The parties expressly agreed that AboutGolf "shall not be liable for any claim of any kind arising from…termination or non-renewal of this Agreement," (Compl. at Ex. C ¶ 16), and that neither party shall be liable to the other for any reason "whatsoever growing out of such termination" (*id.* at ¶ 20).  Therefore, the complaint— which violates the clear language of the parties' agreement—must be dismissed in its entirety.

Second, the agreement's limitation of liability also bars each of the eight claims in the complaint—other than for repair or replacement costs of defective parts—because the complaint alleges only damages, such as for loss of goodwill, lost profits, loss of investment, etc., that are expressly barred by Section 16(b) of the Agreement, which states:

> **16. Limitation of Liability.**  [About Golf] shall not be liable for any claim of any kind arising from . . . (B) indirect incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property.

Third, Plaintiff's complaint should be dismissed because it has failed to properly plead its claims with the required factual support demanded by *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). The complaint rests solely on general and conclusory statements, threadbare recitals of the elements of various causes of action, and speculative allegations made "upon information and belief," all of which are improper under *Iqbal* and its progeny.

Finally, Plaintiff's claim for fraud fails to state a claim because it is based upon representations about future developments in AboutGolf's products, which are statements of future performance and not actionable as a matter of law.  The fraud claim also fails because a showing of damages is a required element of fraud, and any possible damages for fraud are expressly barred by the distributor agreement.

## I.        <u>INTRODUCTION</u>

On  September  22,  2010,  Defendant  AboutGolf  Limited  ("AboutGolf")  terminated Plaintiff Action Group International, LLC ("Action Group") as its distributor of indoor golf simulation  products  for  South  Korea.    That  same  day,  Action  Group  filed  an  eight-count complaint arising out of the termination and claiming, among other things, that it is entitled to declaratory  relief,  injunctive  relief  and  damages  because  the  termination  was  improper.    But Plaintiff's complaint must be dismissed for a number of reasons.

First, the express language of the distribution agreement entered into by the parties bars any attempt by Plaintiff to seek damages arising out of the allegedly improper termination.  The parties expressly agreed that AboutGolf "shall not be liable for ***any claim of any kind arising from…termination or non-renewal of this Agreement,***" (Compl. at Ex. C ¶ 16), and that neither party shall be liable to the other for any reason "whatsoever growing out of such termination" (*id.* at ¶ 20).   In other words, the parties clearly contemplated the situation we have here—Action Group claiming wrongful termination—and agreed that there is no conceivable theory of liability or  damages  under  which  Action  Group  could  recover.    Additionally,  the  parties  went  a  step further and specifically agreed that any claim arising from the distribution agreement, whether related to termination or not, would be limited to actual damages.  Thus, Plaintiff's entire theory of  liability  and  recovery  (with  the  exception  of  "repair  or  replace"  warranty  costs)—loss  of goodwill,  damage  to  its  business,  lost  profits,  punitive  damages,  etc.—is  eradicated  by  the parties' express agreement.

Plaintiff's  complaint  also  suffers  from  numerous  fatal  flaws  beyond  this  express contractual bar.  First, the Supreme Court and courts in this Circuit, under *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), require a plaintiff to plead more than legal conclusions or "naked assertions devoid  of  further  factual  enhancement."    But  Plaintiff  does  nothing  more  than  that  in  the

1

complaint.  The complaint rests solely on general and conclusory statements, threadbare recitals of the elements of various causes of action, and speculative allegations made "upon information and belief."  As this Court has held, these sorts of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" require dismissal under *Iqbal*.  *Denson v. Crish*, No. 3:10CV1440 2010 WL 3808013, *2 (N.D. Ohio Sept. 27, 2010) (Carr, J.).  Second, Plaintiff's claim for fraud fails to state a claim because it is based upon representations about future developments in AboutGolf's products, which are statements of future performance and not actionable as a matter of law.  Moreover, the fraud claim also fails because a showing of damages is a required element of fraud, and any possible damages for fraud are expressly barred by the distribution agreement.

For these reasons, and as set forth in greater detail below, each of Plaintiff's claims fails as a matter of law and the complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

## II.    STATEMENT OF FACTS

### A.    The Parties

AboutGolf, based in Maumee, Ohio, manufactures golf simulation products.  (Compl. at ¶ 2.)  AboutGolf has numerous distributors that sell its simulators around the world.  (*Id.*)  Action Group, based in New Jersey, was AboutGolf's distributor in South Korea until terminated by AboutGolf on or before September 22, 2010.  (*Id.* at ¶ 1.)

### B.    The Territorial Distributorship Agreement For April 6, 2010 – April 6, 2011

On April 6, 2010, AboutGolf and Action Group entered into a one-year Territorial Distributorship Agreement (the "Agreement").  (Compl. at ¶ 7 & Ex. C – Agreement.)[1]  By its

---

[1]  Plaintiff specifically attaches the Agreement to its complaint and refers to, and quotes from, the letters terminating the Agreement throughout its pleading.  (*See, e.g.,* Compl. at Ex. C & ¶¶ 7, 18-21, 22-25, 46-49.)  The Sixth Circuit has held that "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss" and "when a

terms, the Agreement expires on April 6, 2011 and could only be renewed beyond that date upon the mutual written consent of the parties at least sixty days prior to that termination date. (Agreement at ¶ 18.)[2]

### C.    Exclusive Territory Provision Limits Action Group

Action Group was named the exclusive distributor of AboutGolf's products in South Korea until April 6, 2011.  Specifically, the Agreement contains an exclusive territory provision that limits Action Group's sales to the South Korea territory:

> 1. **Grant of Distribution Rights.**  Distributor shall have the right to market, sell, install and service the Products (a) exclusively with the ***"Exclusive Territory"*** described in <u>Exhibit A</u> to this Agreement, and (b) on a non-exclusive basis within the ***"Non-Exclusive Territory"*** described in <u>Exhibit A.</u>  The Exclusive Territory and the Non-Exclusive Territory shall be collectively referred to in this Agreement as the ***"Territory."***  Distributor shall not attempt to sell Products outside the Territory without the prior written consent of AGL.

(*Id.* at ¶ 1.)  According to Exhibit A, Action Group's only sales territory is its exclusive sales territory of South Korea.  (*Id.* at Ex. A).

Nothing in this provision limits AboutGolf's ability to hire a new distributor for the territory after the expiration or termination of the Agreement.  Moreover, nothing in this provision or in the Agreement restricts AboutGolf's ability to discuss the future sales of its own products in the South Korea territory with other distributors while the Agreement was in force.

---

document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 335-36 (6th Cir. 2007).  Thus, the Court may consider the Agreement and the letters terminating it on a motion to dismiss.

[2] Although Plaintiff baldly alleges in its complaint that AboutGolf made oral representations that it "intended a long standing business relationship with Action Group," the Agreement is limited to one year and contains no such representation.  Rather, it contains an integration clause stating that "[t]his Agreement constitutes the entire agreement between [AboutGolf] and Distributor with respect to the subject matter of this Agreement and supersedes all prior understandings between them, whether written or oral.  This Agreement may be modified only by a further writing that is duly executed by both parties."  (Compl. at Ex. C, ¶ 22.)

### D.      Action Group's Obligations As A Distributor

Action Group had numerous distributor obligations that it had to satisfy under the Agreement "[a]s a condition of the grant of the rights" set forth in the exclusive territory provision.  (*Id.* at ¶ 3.)  For example, Action Group must "continuously satisfy the 'Distributor' Program Requirements set forth in <u>Exhibit D</u> to this Agreement."  (*Id.* at ¶ 3(L).)

Exhibit D of the Agreement describes Action Group's obligations under the Distributor Program Requirements in greater detail.  Under the Program, Action Group must:

● Provide AboutGolf with, among other things, a "product sales projection by quarter and sales price list;"

● "Within thirty (30) days after the end of each calendar quarter, submit to [AboutGolf] a report setting forth the name of each end-user customer, location of sale, basic specifications of installation and end-user price;"

● Provide AboutGolf "copies of invoices and checks relating to all sales, the quantity and type of each product sold during each calendar year;" and

● "Within one (1) month after the end of any trade show that Distributor participates in for purposes of showcasing the Products, submit a report to [AboutGolf] detailing all new leads generated from such trade show…."

(*Id.* at Ex. D, ¶¶ A(1), (C)-(E).)

### E.      AboutGolf's Right To Terminate The Agreement Early

The Agreement explicitly provides AboutGolf with the right to terminate early before the April 6, 2011 expiration of the Agreement.  (*Id.* at ¶ 19.)  Specifically, the Agreement allows AboutGolf to terminate Action Group immediately if it fails to satisfactorily perform its distributor obligations, such as those described above in the Distribution Program Requirements, or if it fails to timely pay AboutGolf for the simulators:

**19.  Early Termination.**  Anything to the contrary set forth in this Agreement notwithstanding, [AboutGolf] may immediately terminate this Agreement upon notice to Distributor for any of the following reasons:

A.  *If Distributor fails to timely satisfactorily perform any of its non-monetary obligations under this Agreement* which failure is not cured to the reasonable

4

satisfaction of [AboutGolf] within thirty (30) days after [AboutGolf] gives Distributor Notice of such failure…. * * *

B.  *failure of Distributor to timely make any payment for Products in accordance with the terms* set forth in <u>Exhibit B</u> on three separate occurrences within the term of this Agreement, and such failures have not been cured within ten (10) days after notice from [About Golf]….

(*Id.* at ¶ 19(A)-(B).)  (Emphasis added.)

### F.  No Liability For Termination Of The Agreement

The Agreement also explicitly specifies, in two different broad provisions, that AboutGolf is not liable for any claim arising from the termination of the Agreement.  First, paragraph 16 of the Agreement, entitled "Limitation of Liability," states:

**16.  Limitation of Liability.**  *[About Golf] shall not be liable for any claim of any kind arising from* (A) misuse or negligent use or application of any Product by Distributor or any customer of Distributor's, (B) indirect incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property, *or (C) termination or non-renewal of this Agreement for loss of present or prospective profits, compensation on sales or anticipated sales, or in connection with the establishment, development, or maintenance of Distributor's business.*

(*Id.* at ¶ 16.)  (Emphasis added.)  This limitation of liability also expressly states that, even for claims not arising from a termination of the Agreement, Action Group may never bring any claim against AboutGolf that seeks "indirect incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property."  (*Id.*)

Similarly, paragraph 20 of the Agreement, which describes the "Effect of Termination," broadly states that neither party shall be liable to the other for any reason "whatsoever growing out of such termination":

B.  *neither party shall be liable to the other because of such termination* for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or on account of expenditures, investments, lease or

5

commitments in connection with the business or goodwill of [AboutGolf] or [Action Group] or for any other reason whatsoever growing out of such termination.

(*Id.* at ¶ 20.)  (Emphasis added.)

### G. Indemnification Only For Certain Warranty-Related Defects

The Agreement also provides that the parties will indemnify each other under certain limited circumstances.  (*Id.* at ¶ 15.)  In particular, AboutGolf's indemnity obligation only arises if there is a warranty-related defect that Action Group notifies it of immediately:

A.  [About Golf] agrees to protect Distributor and hold Distributor harmless from any loss or claim arising out of warranty-related defects in the Products that exist at the time of delivery, provided that Distributor gives [AboutGolf] immediate notice of any such loss or claim and cooperates fully with [AboutGolf] in the handling thereof.

(*Id.* at ¶ 15(A).)  Under the warranty, the only covered defect is one in "materials and workmanship" that occurs within "one (1) year following installation."  (*Id.* at Ex. C.) Moreover, nowhere in the contract is there any provision that allows Action Group to fix alleged defects on its own and simply send the bill to AboutGolf.  Rather, the Agreement and the warranty list several detailed steps that must be followed in order for Action Group to have any warranty claim against AboutGolf.  Not only must Action Group provide AboutGolf with immediate notice, as described above, but it must also comply with the other terms of the warranty that require it to "secure a return authorization number (RMA) from [AboutGolf], properly pack, insure and return the materials to [AboutGolf]…."  (*Id.*)

### H. AboutGolf Terminates Action Group

On August 31, 2010, AboutGolf sent a notice of termination to Action Group.  (Compl. at ¶ 46.)  In the notice of termination, AboutGolf set out the various ways that Action Group had violated its distributor obligations under the Agreement and its grounds for termination.  (*See id.*) AboutGolf's grounds for termination of the Agreement included, in particular:

6

> 1. <u>Satisfy the 'Distributor' Program Requirements</u>. AGI has repeatedly failed to provide planning, reports, and other elements specified in Exhibit D to the Agreement. This is a breach of Section 3.L. of the Agreement and also addressed under Section 19.A.
>
> 2. <u>Timely Payment for Products</u>. AGI has repeatedly violated the requirement for timely payment for Products as required under Section 19.B. and described in detail in Exhibit B and is currently in violation of these requirements. This is a breach of Section 19.B.

(Exhibit A – Aug. 31, 2010 letter.)

AboutGolf informed Action Group that this letter served as formal notice under Section 19 to terminate the Agreement, and that the termination would be effective in 10 days of Action Group's receipt of the letter unless it cured item #2 within that time period, or in 30 days if Action Group failed to cure the default identified in item #1.  (*Id.*)

Due to Action Group's failure to cure item #2 within the 10-day time period, AboutGolf sent another letter on September 22, 2010, informing Action Group that its relationship with AboutGolf was terminated immediately.  (*See* Compl. at ¶ 49.)  Specifically, that letter stated:

> Since you have chosen not to correct this clear and serious breach under Section 19.B. of the Agreement, I now must officially inform you that, effective immediately, your relationship with aboutGolf is terminated. I remind you that Section 20 of the Agreement outlines the effects of this termination and that aboutGolf intends to seek collection of the amounts owed to it by AGI and to hold AGI accountable to abide by the terms outlined in that section.

(Exhibit B – Sept. 22, 2010 letter.)

**I.       Action Group Files Its Complaint**

On September 22, 2010, the same day that AboutGolf terminated the Agreement, Action Group filed its complaint alleging eight (8) claims arising from the termination:  Count 1 – Declaratory Judgment: Improper Termination of Distributor Agreement; Count 2 – Breach of Contract: Infringement on Action Group's Exclusive Territory;  Count 3 – Breach of Contract: Failure to Indemnify for Product Defects; Count 4 – Violation of the Ohio Deceptive Trade

Practices Act; Count 5 – Fraud; Count 6 – Promissory Estoppel; Count 7 – Unjust Enrichment; and Count 8 – Tortious Interference With Business Relationships.

### III.    ARGUMENT

The complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) for a number of reasons.  First, the parties expressly agreed that Action Group abdicated any right to sue for termination of the Agreement, or for any of the damages it claims in its remaining counts, other than for the cost of repairing or replacing defective parts.  Second, the conclusory allegations set forth in the complaint fail to state a claim under the stringent pleading standards set forth by the Supreme Court in *Iqbal*, as well as Rule 9(b), which governs Plaintiff's fraud claim.  For these reasons, and as explained further below, the complaint should be dismissed with prejudice.

**A.    The Complaint Must Be Dismissed Because Each Of Its Claims Is Barred By The Express Limitation Of Liability In The Agreement**

Immediately after AboutGolf terminated it as a distributor, Action Group filed this eight-count complaint alleging that the termination was improper and that Action Group is entitled to declaratory relief and damages as a result.  In order to remedy the allegedly wrongful termination, Plaintiff requests the following relief:

● "a declaration that AboutGolf is not permitted to terminate Action Group's distribution rights" (Compl. at p. 16);

● "an order preliminarily and permanently enjoining AboutGolf from terminating Action Group as a distributor in South Korea" (*id.*);

● "compensatory and punitive damages" (*id.*);

● "lost profits" (*id.* at ¶ 19);

● relief from "irreparable harm" caused "by setting off a cascading effect of breaches of contracts with Action Group's customers that would lead to irreparable harm to its goodwill" (*id.* at ¶ 56); and

● damages as a result of "significant loss of goodwill, money and time" (*id.* at ¶ 86).

But the parties, in their integrated Agreement already planned for this situation. Paragraph 16 of the Agreement explicitly states that AboutGolf "shall not be liable for *any claim of any kind arising from…termination or non-renewal of this Agreement:*"

> **16.  Limitation of Liability.**  [About Golf] shall not be liable for any claim of any kind arising from . . . (C) termination or non-renewal of this Agreement for loss of present or prospective profits, compensation on sales or anticipated sales, or in connection with the establishment, development, or maintenance of Distributor's business.

(Compl. at Ex. C, ¶ 16.)  The Sixth Circuit has held in various contexts that the phrase "arising out of" in a contract is "conspicuously broad" (*Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 937 (6th Cir. 1998)) and "extremely broad" (*Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983)).

Similarly, paragraph 20 of the Agreement, which describes the "Effect of Termination," broadly states that neither party shall be liable to the other for any reason "whatsoever growing out of such termination:"

> B.  *neither party shall be liable to the other because of such termination* for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or on account of expenditures, investments, lease or commitments in connection with the *business or goodwill* of [AboutGolf] or [Action Group] or *for any other reason whatsoever growing out of such termination.*

(*Id.* at ¶ 20.)  (Emphasis added.)

Thus, the Agreement is crystal clear:  Action Group may not bring any claim seeking damages from the termination or non-renewal of the Agreement.  This bars Counts 1, 2, 6 and 7.  Count 1, in which Plaintiff claims that "[t]he wrongful termination…would lead to irreparable harm to its goodwill" must be dismissed.  (Compl. at ¶ 56.)  As shown above, the parties agreed that liability for any loss of goodwill is clearly barred by ¶ 20 of the Agreement.  Similarly, Count 2, in which Plaintiff seeks damages because AboutGolf terminated the contract in light of

allegedly improper discussions with a competing distributor concerning the South Korea territory must also be dismissed as it, too, arises out of the termination.  For these same reasons, Counts 6 and 7, which seek damages under theories of promissory estoppel and unjust enrichment purportedly arising from these same facts, must also be dismissed.

Section 16's limitation of liability also bars each of the eight claims in the complaint—other than for repair or replacement costs of defective parts—because the complaint alleges only damages expressly barred by Section 16(b) of the Agreement, which states:

> **16.  Limitation of Liability.**  [About Golf] shall not be liable for any claim of any kind arising from . . . (B) indirect incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property.

This portion of the provision is not predicated on a claim for improper termination of the Agreement.  Rather, it bars each and every claim that seeks damages other than actual damages, such as the cost to repair or replace a defective part.  Plaintiff's complaint, however, except for a limited portion of its warranty claims, seeks everything *but* actual damages.  The complaint—and, incidentally, Plaintiff's threatened preliminary injunction motion—hinges on alleged damages for the destruction of Plaintiff's business, goodwill, investment, customer relationships, etc.  Action Group, by signing the Agreement, agreed that AboutGolf "shall not be liable for any claim of any kind arising from" such purported damages.  The parties' own Agreement provides the grounds to dismiss the entire complaint, other than the claim for repair and replacement costs for breach of warranty (which should be dismissed for the other reasons explained *infra*).

### B.    Counts 1-4 & 6-8 Should Be Dismissed For Failure To State A Claim Under This Court's Stringent Pleading Standards

Counts 1-4 & 6-8 fail for a number of additional reasons, namely that the conclusory and speculative nature of the threadbare allegations supporting these counts cannot state a claim under the stringent pleading standards of *Ashcroft v. Iqbal*.

### 1.      Pleading Standard Required To Survive A Motion To Dismiss

As this Court has held, citing the landmark case of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), "[a] claim survives a motion to dismiss under Fed.R.Civ.P. 12(b)(6) if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Woods v. Willis*, No. 3:09CV2412, 2010 WL 3808279, *3 (N.D. Ohio Sept. 27, 2010) (Carr, J.) (citing *Iqbal*, 129 S. Ct. at 1949).  The Supreme Court in *Iqbal* set out a "two-pronged approach" for deciding a motion to dismiss under Rule 12(b)(6).  129 S. Ct. at 1949-50.

First, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 1950.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do no suffice."  *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007)).  Under this standard, Plaintiff must provide "more than labels and conclusions…."  *Id.*  Thus, as this Court has held, "a complaint is insufficient 'if it tenders naked assertions devoid of further factual enhancement.'"  *Woods*, 2010 WL 3808279, *3 (citing *Iqbal*, 129 S. Ct. at 1949.).  Further, as the Sixth Circuit has held, "although we must accept all well-pleaded factual allegations in the complaint as true, we need not 'accept as true a legal conclusion couched as a factual allegation.'"  *Hensley Mfg. v. ProPride, Inc.*,  579 F.3d 603, 609 (6th Cir. 2009) (internal citations omitted.)

Second, after discarding all conclusory allegations, the court must determine whether the remaining, well-pleaded factual allegations "state a claim to relief that is plausible on its face."  *Iqbal*, 129 S. Ct. at 1949 (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  As the Supreme Court explained, this standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and "facts that are merely consistent with a defendant's liability" do not suffice.  *Id.* (citation

11

omitted).  As this Court has held, Rule 8 demands more from the plaintiff than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Denson v. Crish*, No. 3:10CV1440, 2010 WL 3808013, *2 (N.D. Ohio Sept. 27, 2010) (Carr, J.) (citing *Iqbal*, 129 S. Ct. at 1949).

### 2.   Plaintiff Fails To State A Claim In Count 1 – Declaratory Judgment: Improper Termination Of Distributor Agreement

Count 1 of Plaintiff's complaint, alleging improper termination of the Agreement, is replete with legal conclusions but is factually insufficient.  For example, in paragraph 53 of the complaint, Plaintiff alleges that "AboutGolf has two purported reasons for the termination: (1) Action Group's failure 'to make timely payments,' and (2) Action Group's failure 'to satisfy the distributor program requirements'" and that both of these grounds "are factually incorrect and, moreover, do not allow AboutGolf to terminate the Agreement."  (Compl. at ¶ 53.)  But Plaintiff does not allege a single fact describing *why* these grounds are "factually incorrect" or *why* they are improper grounds for termination.  Similarly, in paragraph 56, plaintiff alleges: "AboutGolf seeks to evade the Distributor Agreement by manufacturing pre-textual (sic) and inaccurate information regarding its relationship with Action Group."  (*Id.* at ¶ 56.)  But Plaintiff does not allege *why* its grounds are pretextual.  These are text-book examples of "unadorned the-defendant-unlawfully-harmed-me accusation[s]" that are insufficient under *Iqbal.  Denson*, 2010 WL 3808013, at * 2 (internal citations omitted).

The reality is that the two reasons that Plaintiff claims AboutGolf gave for termination— (1) Action Group's failure to make timely payments and (2) its failure to satisfy the requirements of the distributor program—are both valid on their face under the express language of the Agreement.  The Agreement provides that AboutGolf "may immediately terminate this Agreement" if Action Group fails "to timely make any payment for Products."  (Compl. at Ex. C, ¶ 19(B)).  The Agreement also states that "as a condition of the grant of the rights" set forth in

12

the Agreement, Action Group must "continuously satisfy the 'Distributor' Program Requirements.'" (*Id.* at ¶ 3(L).)  Because both of the grounds for termination cited in Plaintiff's complaint are valid on their face under the Agreement and because Plaintiff has failed to allege facts—as opposed to conclusory allegations—to support its claim that these reasons were "pretextual" or "incorrect," Count 1 must be dismissed.

### 3. Plaintiff Fails To State A Claim In Count 2 – Breach Of Contract: Infringement On Action Group's Exclusive Territory

In Count 2, Plaintiff alleges, "upon information and belief," that AboutGolf has breached the Agreement and infringed upon its exclusive territory by discussing the South Korea territory with one of Plaintiff's competitors.  (Compl. at ¶¶ 61-64.)  More specifically, Plaintiff alleges that:  "Upon information and belief, AboutGolf has engaged in discussions with UMB Communications, a competitor of Action Group" and that "[u]pon information and belief, AboutGolf has contacted other distributors regarding the sale of AboutGolf's products."  (*Id.*)  However, Plaintiff's allegations "upon information and belief" are insufficient under *Iqbal*.  For example, in *Amara v. ATK, Inc.*, No. 3:08-cv-00378, 2009 WL 2730528, *5 (S.D. Ohio Aug. 26, 2009), the Court granted a motion to dismiss in a wrongful discharge case where the plaintiff's complaint alleged "'upon information and belief' each individual defendant was a decision maker in Plaintiff's termination."  The court held that these allegations "only plainly state Plaintiff *believes* each Defendant played a role in his termination," and do not factually "connect Defendants' discriminatory conduct with Plaintiff's termination."  *Id.*  (Emphasis added.)  Therefore, the court dismissed the complaint, holding that "based on *Iqbal* and *Twombly*, these statements are no longer sufficient to satisfy the notice pleading requirements."  *Id.*  Similarly, here, Plaintiff fails to allege any factual basis to connect how or why AboutGolf's alleged conduct—engaging in discussions with another distributor—violates the Agreement.

More importantly, Plaintiff fails to allege that AboutGolf actually hired another distributor for the South Korea territory while the Agreement was in force.  The exclusive territory provision grants Action Group "the right to market, sell, install and service the Products" exclusively within South Korea.  (Compl. at Ex. C, ¶ 1.)  Plaintiff has not alleged that AboutGolf has granted another distributor those rights.  Further, nothing in the exclusive territory provision or any other provision of the Agreement prevents AboutGolf from discussing its own products with another distributor.  Mere discussions with another potential distributor to be hired after the Agreement expires or is terminated does not violate the Agreement as a matter of law.  For these reasons, Count 2 must be dismissed.

**4.    Plaintiff Fails To State A Claim In Count 3 – Breach Of Contract: Failure To Indemnify For Product Defects**

In Count 3, Plaintiff claims that it is entitled to damages for AboutGolf's purported failure to indemnify for product defects.  Under the Agreement, AboutGolf's indemnity obligation only arises if there is a warranty-related defect that Action Group notifies it of immediately.  (*Id.* at ¶ 15(A).)  Further, under the warranty, the only covered defect is one in "materials and workmanship" that occurs within "one (1) year following installation."  (*Id.* at Ex. C.)  In the event of any warranty claim, not only must Action Group provide AboutGolf with immediate notice, as described above, but it must also comply with the other terms of the warranty that require it to "secure a return authorization number (RMA) from [AboutGolf], properly pack, insure and return the materials to [AboutGolf]…."  (*Id.*)  Nothing in the Agreement or the warranty gives Action Group the right to do what it claims to have done here: namely, sidestep the Agreement, make its own repairs, and simply send AboutGolf the bill.

But because Plaintiff claims that AboutGolf failed to conduct warranty repairs for unnamed customers, on unnamed products on unnamed dates, it is impossible to know whether

Plaintiff has complied with these requirements, which Plaintiff fails to allege.  Not only is this factually insufficient under *Iqbal*, but Plaintiff's allegations also ignore the express language of the Agreement and the warranty and, therefore, this claim must be dismissed.

### 5. Plaintiff's Claim Under Ohio's Deceptive Trade Practices Act (Count 4) Must Be Dismissed For Failure To State A Claim

Plaintiff also alleges that AboutGolf violated the Ohio Deceptive Trade Practices Act (the "Act"), O.R.C. § 4165.01, *et seq.*, by "willfully using deceptive representations in connection with its goods and services…knowing that such representations were deceptive."  (Compl. at ¶ 74.)  The Act "is substantially similar to the federal Lanham Act, and it generally regulates trademarks, unfair competition, and false advertising."  *Yocono's Restaurant, Inc. v. Yocono*, 100 Ohio App.3d 11, 17 (1994).  But here, Plaintiff does not allege any of these theories.

To state a claim under the Act, a plaintiff must show:

(1) the defendant has made false or misleading statements of fact concerning his own product or another's; (2) the statement deceives or tends to deceive a substantial portion of the intended audience; (3) the statement is material in that it will likely influence the deceived customer's purchasing decisions; (4) the [statements] were introduced into interstate commerce; and (5) there is some causal link between the challenged statements and harm to the plaintiff.

*HER, Inc. v. RE/MAX First Choice, LLC*, 468 F. Supp. 2d 964, 979 (S.D. Ohio 2007).  Further, to sustain a claim under the Act, a plaintiff also must show that it has suffered an injury as a result of the allegedly deceptive representations.  *See The Diamond Co. v. Gentry Acquisition Corp.*, 48 Ohio Misc.2d 1, 5 (1998); *Mafcote, Inc. v. Genatt Assoc., Inc.*, No. 104-CV-853, 2007 WL 527870 (S.D. Ohio Feb. 14, 2007).

Plaintiff claims that AboutGolf represented that its goods and services "had characteristics, uses, benefits or quantities that they did not have" (Compl. at ¶ 75) but fails to allege a single characteristic, use, benefit or quantity that they did not have.  Similarly, Plaintiff claims that AboutGolf stated that its goods or services "were of a particular standard, kind,

quality or grade" (*id.* at ¶ 76) but again, it fails to allege what standard, kind, quality or grade AboutGolf allegedly claimed they were.

Moreover, Plaintiff fails to allege that it suffered any cognizable injury as a result of these (unidentified) statements.  Plaintiff claims that "[a]s a result of AboutGolf's deceptive trade practices, [Plaintiff] has suffered damages."  (*Id.* at ¶ 80.)  However, as shown above, the express language of the limitation of liability provisions prohibits Plaintiff from recovering any conceivable type of damages.  (*Id.* at Ex. C, ¶¶ 16, 20.)  The Agreement prevents Plaintiff from recovering "for any claim of any kind arising from…indirect, incidental, consequential, special or punitive damages…."  (*Id.* at ¶ 16.)  Therefore, because Plaintiff has failed to plead that it is entitled to any recoverable damages, its claim under the Act must be dismissed.

### 6.        Plaintiff Fails To State A Claim In Count 6 – Promissory Estoppel

Under Ohio law, "[a] claim of promissory estoppel involves four elements: (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise was made, (3) the reliance is reasonable and foreseeable, and (4) the party relying on the promise must have been injured by the reliance."  *Patrick v. Painesville Commercial Properties, Inc.*, 123 Ohio App.3d 575, 583 (1997).  "'[M]ere representations of future conduct without more specificity' do not form a valid basis for the application of the doctrine of promissory estoppel."  *Daup v. Tower Cellular, Inc.*, 136 Ohio App.3d 555, 563 (2000).

Count 6 of Plaintiff's complaint contains four conclusory paragraphs but not a single fact.  For example, Plaintiff claims that "AboutGolf made numerous promises" but does not describe a single one of those promises.  (Compl. at ¶ 89.)  Plaintiff goes on to state that "[a]s a result of AboutGolf's broken promises, Action Group has suffered damages."  (*Id.* at ¶ 91.)  But as discussed above, these naked assertions are insufficient under *Iqbal*.

First, to the extent that Plaintiff claims it is entitled to promissory estoppel because of the alleged "promises" that AboutGolf made about the development and possible future features of its products, Plaintiff's claim fails because such "'mere representations of future conduct without more specificity' do not form a valid basis for the application of the doctrine of promissory estoppel." *Daup*, 136 Ohio App.3d at 563.  Second, a claim of promissory estoppel requires proof of "injury" caused by the defendant.  As shown *supra*, the Agreement's limitation of liability bars any relief by Action Group.  While Action Group may claim it was injured, it cannot possibly have been injured in a way that is compensable.

Finally, to the extent that Plaintiff claims that it is entitled to relief because AboutGolf made "promises" about the parties' "relationship," those promises are covered by the Agreement and not actionable as a matter of law.  (Compl. at ¶ 89.)  "[W]here the rights and obligations of the parties are set forth in a written agreement, the equitable doctrine of promissory estoppel is unavailable." *Frank v. University of Toledo*, 621 F. Supp. 2d 475, 485 (N.D. Ohio 2007) (citing *Gallant v. Toledo Pub. Sch.,* 84 Ohio App.3d 378, 386 (1992)).  But because AboutGolf must guess what promises Plaintiff refers to, Plaintiff's claim fails under *Iqbal* and must be dismissed.

### 7.    Plaintiff Fails To State A Claim In Count 7 – Unjust Enrichment

Similarly, Count 7 of Plaintiff's complaint contains four conclusory paragraphs but not a single fact.  Plaintiff claims that "[b]y now ending its relationship with Action Group, AboutGolf has been unjustly enriched…."  (Compl. at ¶ 94.)  But again, naked assertions and threadbare recitals are insufficient under *Iqbal*.  Moreover, even if Plaintiff were to add a sufficient factual basis for its claim for unjust enrichment, this claim still fails as a matter of law because of the existence of a valid and enforceable written contract.  Ohio courts have emphasized that "[u]njust enrichment operates in the absence of an express contract or a contract implied in fact[.]" *Kincaid v. Erie Ins. Co.,* 183 Ohio App.3d 748, 757 (2009) (citing *Univ. Hosps. of*

17

*Cleveland, Inc. v. Lynch,* 96 Ohio St.3d 118, 130 (2002)). "Importantly, unjust enrichment cannot exist where there is a valid and enforceable written contract." *Id.*  Thus, in granting a defendant's motion to dismiss, this Court held that the plaintiff could not "sue and recover for unjust enrichment and breach of contract.  Ohio law permits no such thing: 'unjust enrichment cannot exist where there is a valid and enforceable written contract.'"  *Younglove Const., LLC v. PSD Development, LLC*, No. 3:10-cv-1602, 2010 WL 3515603, *2 (N.D. Ohio, Sept. 3, 2010) (Carr, J.) (internal citation omitted).  Here, the parties' relationship—and whether it was properly terminated—is covered by the written Agreement.  Therefore, Plaintiff's claim for unjust enrichment must be dismissed.

> **8.    Plaintiff Fails To State A Claim In Count 8 – Tortious Interference With Business Relationships**

Under Ohio law, to prove a claim for tortious interference with business relationships, a plaintiff must show that "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another."  *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1 (1995).  However, where a plaintiff fails to allege that "any individuals terminated, or decided not to enter into relationships with him as a result of [defendant's] actions" and merely states that defendant "'interfered' with certain unspecified business relationships," the Sixth Circuit has held that a plaintiff's claim cannot survive a motion to dismiss under *Iqbal.  Wilkey v. Hull*, 366 Fed.Appx. 634, 638 (6th Cir. 2010).

Plaintiff does not provide a single name of any customer with whom AboutGolf allegedly interfered.  Further, Plaintiff fails to allege that any individual or entity terminated or decided not to enter into a relationship with Plaintiff as a result of AboutGolf's alleged conduct.  As the Sixth Circuit held in *Wilkey*, "[a]bsent some factual allegation that [defendant's] actions ended or

prevented a business relationship, [plaintiff] does not state a claim." *Id.*  For this reason, Count 8 of Plaintiff's complaint must be dismissed.

### C.  Plaintiff's Fraud Claim (Count 5) Must Be Dismissed

Count 5 alleges a claim for fraud based upon various misrepresentations that AboutGolf allegedly made about its products.  (Compl. at ¶ 81.)  Under Ohio law, to prove a claim of fraud a plaintiff must show:  (1) misrepresentation of, or failure to disclose a material fact; (2) knowledge that the representation was false; (3) intent to induce reliance by the other party; (4) justifiable reliance thereon; and (5) damages proximately caused by reliance on the misrepresentation or concealment.  *See Burr v. Bd. of Cty. Comm'rs of Stark Cty.*, 23 Ohio St.3d 69, 73 (1986).  Under Fed. R. Civ. P. 9(b), in pleading these elements of fraud, a "plaintiff must state with particularity the circumstances constituting fraud."

### 1.  Plaintiff Fails To Plead Any Recoverable Damages

First, Plaintiff's claim for fraud must be dismissed because it has not pleaded any recoverable damages.  Damage is a required element of a fraud claim under Ohio law.  *Burr*, 23 Ohio St. 3d at 73.  *See also Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 531 (6th Cir. 2007) ("speculative damages cannot support a cause of action for fraud.")

Here, Plaintiff claims that as a result of AboutGolf's alleged fraudulent conduct, Plaintiff incurred "significant loss of goodwill, money and time."  (Compl. at ¶ 86.)  But as shown above, these damages are not recoverable under the express language of the parties' Agreement.  (*Id.* at Ex. C, ¶¶ 16, 20.)  The Agreement specifically prevents Plaintiff from recovering "for any claim of any kind arising from…indirect, incidental, consequential, special or punitive damages…." (*Id.* at ¶ 16.)  Therefore, because Plaintiff has failed to plead that it is entitled to any recoverable damages, its fraud claim must be dismissed.

19

## 2. Representations About Future Actions Are Not Actionable

Moreover, under Ohio law, a claim for "[f]raud cannot be predicated upon promises or representations relating to future actions or conduct." *Tibbs v. National Homes Constr. Corp.,* 52 Ohio App.2d 281, 286 (1977). For example, this Court has held that the statement that a party was "going to start its own airline" in the future is a representation "concerning a future event[]" and is insufficient to form the basis of a fraud claim. *Gouge v. BAX Global, Inc.*, 252 F. Supp. 2d 509, 515-516 (N.D. Ohio 2003) (Carr, J.). But each one of the alleged misrepresentations that Plaintiff relies upon is a statement about the future development of each of these products. For example, Plaintiff claims:

- "AboutGolf represented…that aG Control was being developed and *would be ready* for sale soon" (*id.* at ¶ 27);

- "…AboutGolf represented that PGA Tour Range Surround *would be available* in 2009" (*id.* at ¶ 30);

- "[AboutGolf] represented that '3TrakMobile' and '3TrakCube' *were being developed and would be available soon*" (*id.* ¶ 33);

- "AboutGolf informed Action Group that *it was developing an online gaming and connectivity solution*" (*id.* ¶ 36);

- "…AboutGolf represented that [club head speed] sensors, which included an additional camera, *would be available by early 2009*" (*id.* ¶ 39); and

- "…AboutGolf represented that these [Real Time 3D] graphics *would be available by early 2009*" (*id.* ¶ 42).

(Emphasis added.) Thus, any fraud claim based upon these representations about the future fails as a matter of law. For these reasons, Plaintiff's fraud claim must be dismissed.

## IV. CONCLUSION

For the reasons discussed above, AboutGolf respectfully requests that this Court grant its motion and dismiss Plaintiff's complaint with prejudice.

/s/ Erica L. Keller
Nicholas B. Gorga, Esq. (admitted *pro hac vice*)
    ngorga@honigman.com
Erica L. Keller, Esq. (admitted *pro hac vice*)
    ekeller@honigman.com
HONIGMAN MILLER SCHWARTZ
  AND COHN LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI  48226
Phone:  (313) 465-7640
Fax:  (313) 465-8000

C. William Bair, Esq. (0015840)
    bairb@wagonersteinberg.com
Fan Zhang, Esq. (0070677)
    zhangf@wagonersteinberg.com
WAGONER & STEINBERG, PLC
7445 Airport Highway
Holland, OH  43528
Phone:  (419) 865-1251
Fax:  (419) 866-8798

Dated November 1, 2010        ATTORNEYS FOR DEFENDANT

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of November, 2010, a copy of the foregoing was filed electronically.  I certify that all parties in the case are registered CM/ECF users and that service is accomplished by the CM/ECF system.

<u>/s/ Erica L. Keller</u>
Erica L. Keller, Attorney for Defendant
