IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Action Group International, LLC,      Case No. 3:10CV2132

    Plaintiff

  v.             ORDER

AboutGolf, Ltd.,

     Defendant

   This is a suit brought by a distributor of "golf simulation" devices against the manufacturer. Plaintiff Action Group International, LLC (AGI), through an agreement with defendant AboutGolf, Ltd. (AboutGolf), was the sole distributor of AboutGolf's products in South Korea. AboutGolf terminated the agreement, and AGI has sued for improper termination, breach of contract, fraud, violations of Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.01, *et seq.*, promissory estoppel, unjust enrichment and tortious interference with business relationships. AGI seeks injunctive relief, a declaratory judgment and money damages.

   Jurisdiction is proper under 28 U.S.C. § 1332.

   Pending is AboutGolf's motion to dismiss. [Doc. 14]. For the following reasons, the motion is granted in part and denied in part.

## Background

### A. The Distributor Agreements

Beginning in March, 2008, the parties entered into a series of three one-year distribution agreements whereby AboutGolf gave AGI exclusive right to market, sell, install and service AboutGolf's 3Trak products in South Korea for the ensuing year. The 2008 agreement was followed by a 2009 agreement entered in March, 2009. The parties signed the 2010 Agreement in April, 2010. Each agreement provided that Ohio law controls.

Under the 2010 Agreement, AGI agreed to meet certain obligations, including to:

A. clearly represent to all prospects and customers that the Products are produced by [AboutGolf];

B. not market or sell any products of [AboutGolf] that are not listed on Exhibit A;

[.  .  .]

E. maintain a formal place of business for the distribution, demonstration, and sale of the Products;

[.  .  .]

L. continuously satisfy the "Distributor" Program Requirements set forth in Exhibit D attached to this Agreement;

[.  .  .]

O. notify [AboutGolf] promply of any investigations, proceedings, customer complaints, or similar matters related to Distributor's activities pursuant to this Agreement, any Product or otherwise from any customer or governmental or regulatory body within the Territory [.  .  .]  .

[Doc. 1-3, ¶ 3].

2

Under "Distributor Program Requirements," AGI must provide AboutGolf with product sales projections, a marketing plan and quarterly reports on sales, among other reporting requirements. [Doc. 1-3, Exhibit D].

AboutGolf agreed to provide sales and technical training and assistance and to keep AGI informed about future product developments.

The agreement included an indemnification provision, under which AboutGolf agreed "to protect Distributor and hold Distributor harmless from any loss or claim arising out of warranty-related defects in the Products that exist at the time of delivery, provided that Distributor gives AGL immediate notice of any such loss or claim and cooperates fully with AGL in the handling thereof." [Doc. 1-3, ¶ 15].

The agreement ran from April 6, 2010, to April 6, 2011. AboutGolf reserved the right, however, to terminate the agreement immediately if certain events occurred:

> A. If Distributor fails to timely satisfactorily perform any of its non-monetary obligations under this Agreement which failure is not cured to the reasonable satisfaction of [AboutGolf] within thirty (30) days after [AboutGolf] gives Distributor Notice of such failure [.   .]
>
> B. [F]ailure of Distributor to timely make any payment for Products in accordance with the terms set forth in Exhibit B on three separate occurrences within the term of this Agreement, and such failures have not been cured within ten (10) days after notice from [AboutGolf].

[Doc. 1-3, ¶ 19].

> A limitation of liability clause provided:
>
> [AboutGolf] shall not be liable for any claim of any kind arising from: (A) misuse or negligent use or application of any Product by Distributor or any customer of Distributor's, (B) indirect incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property, or (C) termination or non-renewal of this Agreement for loss of present or prospective profits, compensation on sales

3

or anticipated sales, or in connection with the establishment, development, or maintenance of Distributor's business.

[Doc. 1-3, ¶ 16].

The agreement detailed the effects of termination:

A. all amounts owing by Distributor to [AboutGolf] or by [AboutGolf] to Distributor shall remain payable under the terms of the sale and this Agreement; and

B. neither party shall be liable to the other because of such termination for compensation, reimbursement or damages on account of the loss of prospective profits or anticipated sales, or on account of expenditures, investments, lease or commitments in connection with the business or goodwill of [AboutGolf] or Distributor or for any reason whatsoever growing out of such termination [. . .].

[Doc. 1-3, ¶ 20].

An integration clause stated "[t]his Agreement constitutes the entire agreement between [AboutGolf] and Distributor with respect to the subject matter of this Agreement and supersedes all prior understandings between them, whether written or oral. This Agreement may be modified only by a further writing that is duly executed by both parties." [Doc. 1-3, ¶ 22].

Much of the 2010 Agreement was similar to the two previous agreements, but the limitation of liability clause was unique.

## B. AGI's Work Under the Agreements

According to the complaint, since 2008 AGI has invested over $5 million in developing the market in South Korea, and developed its own goodwill to advance sales of AboutGolf products. South Korea became the most lucrative international territory for AboutGolf's sales in 2009.

In 2008, AboutGolf represented that it was developing several additional products and features for its golf simulation products, including "aG Control," "PGA Tour Surround," online gaming and connectivity, club head speed cameras, and "real time 3D graphics." AboutGolf stated

4

that these products would be available in 2009. But by May 2010, only the club head speed cameras actually materialized.

In 2009, AboutGolf represented that it was developing "3Trak Mobile" and "3Trak Cube." These products likewise are not available.

As part of its promotion of AboutGolf products, AGI told its customers that the products would include these enhancements.

AGI alleges that it has been inundated with customer complaints regarding faulty and defective products. AGI remedied many of these complaints itself, intending to seek recovery later from AboutGolf. The costs of these services and repairs exceeded $700,000. Among other losses and damages, AGI alleges damage to its reputation and goodwill.

AGI believes that beginning in early August, 2010, AboutGolf communicated with other potential distributors in South Korea. Among these was UMB Communications, which offered to purchase at least twenty simulators a month.

### C. Early Termination and Subsequent Litigation

On August 31, 2010, AboutGolf sent a letter to AGI stating that AGI had violated its obligations under the 2010 Agreement. The letter stated the violations included failure to pay AboutGolf invoices totaling $166,452 and failure to submit its planning, reports, and other elements as required under the agreement. AboutGolf told AGI that if it did not render payment within ten days and file the proper reports within thirty days, AboutGolf would exercise its right to terminate the distributor agreement.

On September 22, 2010, AboutGolf notified AGI that it was terminating the distributor agreement. That same day, AGI filed its complaint.

5

AGI's complaint asserts eight causes of action: 1) Declaratory Judgment: Improper Termination of Distributor Agreement; 2) Breach of Contract: Infringement on AGI's Exclusive Territory; 3) Breach of Contract: Failure to Indemnify for Product Defects; 4) Violation of the Ohio Deceptive Trade Practices Act; 5) Fraud; 6) Promissory Estoppel; 7) Unjust Enrichment; and 8) Tortious Interference with Business Relationships.

AboutGolf filed the pending motion to dismiss, alleging that the terms of the 2010 agreement prohibit the lawsuit and that AGI failed to state a claim on which relief may be granted.

## Standard of Review

A claim survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,    U.S.   , 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

I must "construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). Plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## Discussion

AboutGolf asserts two reasons why AGI's complaint fails to state a claim for which relief may be granted. First, AboutGolf claims that under the agreement, AGI abdicated any right to sue for termination of the agreement or for any of the damages alleged in the remaining counts, apart from the cost of repairing or replacing defective parts. Second, AboutGolf challenges the sufficiency of the pleading of each claim in the complaint.

## A. Limitation of Liability

AboutGolf argues that the limitation of liability provision expressly bars the relief sought by AGI, and therefore AGI's complaint must be dismissed.

The limitation of liability reads:

> [AboutGolf] shall not be liable for any claim of any kind arising from: [.   .] (B) indirect incidental, consequential, special or punitive damages known or unknown, including, without limitation, lost revenues and profits, loss of production, or injury to persons and/or property, or (C) termination or non-renewal of this Agreement for loss of present or prospective profits, compensation on sales or anticipated sales, or in connection with the establishment, development, or maintenance of Distributor's business.

¶ 16.

AboutGolf believes that both (B) and (C) operate to bar AGI's claims.[1]

---

[1] Although I address the applicability of the limitation of liability to the fraud claims later in this opinion, I find that even to the extent the limitation of liability would be applicable to such claims, it does not have a retroactive effect to bar claims accruing under the 2008 or 2009 Agreements.

AboutGolf argues that the incorporation clause in the 2010 agreement "eviscerated all prior agreements or understandings, including the superseded 2008 and 2009 agreements." I disagree.

The incorporation clause reads: "This Agreement constitutes the entire agreement between [AboutGolf] and [AGI] with respect to the subject matter of this Agreement and supersedes all prior understandings between them, whether written or oral." [Doc. 1-3, ¶ 22]. The subject matter of the agreement is the granting of a one-year right of distributorship. While this clause prevents the parties from asserting rights given under the previous agreements to claims arising during the term of the 2010 Agreement, superseding these agreements is not the same as "eviscerating" them. The prior behavior of the parties is governed by their previous contracts.

### 1. "Indirect Incidental, Consequential, Special or Punitive Damages"

AboutGolf reads ¶ 16(B) to bar each and every claim for damages other than the cost to repair or replace defective parts. AboutGolf points out that ¶ 16(B) is not predicated on termination of the contract but applies to any claim arising on the contract.

AGI argues that the term "indirect" in ¶ 16(B), as that clause is written (without a comma after "indirect") modifies the descriptive terms that come thereafter ("incidental, consequential, special or punitive"). Paragraph 16(B), according to AGI, thus limits recovery only to indirect damages of the sort thereafter designated.

As thus interpreted, ¶ 16(B), according to AGI, does not bar recovery for "direct" incidental, consequential, special or punitive damages arising out of warranty-related defects. AGI also argues that AboutGolf's interpretation of ¶ 16(B) would render the agreement's indemnification provision meaningless.

Construction of a written contract is a matter of law for the court. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241 (1978). The primary goal of contract construction is to give effect to the intentions of the contracting parties. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St. 3d 130, 132 (1987). A contract that is, by its terms, clear and unambiguous requires no real interpretation or construction

---

This reading is in accord with Ohio law, which distinguishes between renewal contracts and contract extensions. *State ex rel. Preston v. Ferguson*, 170 Ohio St. 450, 457-458 (1960) ("[A] renewal option constitutes a present grant only for the original term, and a new contract must be executed . . . if the option to renew is . . . exercised. [A] contract . . . containing an option to extend an agreement constitutes a present grant which, upon exercise of the option, extend[s] the term of the original agreement . . .).

Had AboutGolf wanted to extinguish all residual rights arising under the prior agreements, it could have included an express and unambiguous provision to that effect in the 2010 Agreement.

and will be given the effect called for by the plain language of the contract. *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St. 3d 51, 53 (1989).

A contract is ambiguous if its provisions are susceptible to two or more reasonable interpretations. *Covington v. Lucia*, 151 Ohio App. 3d 409, 414 (2003). "[W]here there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. In other words, he who speaks must speak plainly or the other party may explain to his own advantage." *McKay Mach. Co. v. Rodman*, 11 Ohio St. 2d 77, 80 (1967) (internal citation omitted). Whether a contract's terms are clear or ambiguous is a question of law for the court. *Westfield Ins. Co. v. HULS Am., Inc.*, 128 Ohio App. 3d 270, 291 (1998).

I find AGI's reading persuasive. If a comma followed the word "indirect," AboutGolf's reading would be correct—the limitation on liability would bar any claim for indirect damages, incidental damages, consequential damages, special damages or punitive damages. But as written, without the comma, "indirect" modifies all ensuing descriptive terms, rather than being simply one of them. At the very least, the missing comma renders the clause ambiguous, and such ambiguity must be construed against the drafter.

Paragraph 16(B) does not bar AGI's claims.

### 2. Claims Arising From Termination or Non-Renewal of Agreement

AboutGolf asserts that ¶ 16(C) bars any claim for damages resulting from termination or non-renewal of the agreement, regardless of whether the terms of the agreement permitted such early termination. AboutGolf also argues that because the agreement expressly bars liability for loss of goodwill in ¶ 20, which details the effect of termination or non-renewal, AGI's claim for loss of goodwill must be dismissed.

9

AGI argues that ¶ 16(C) only applies where termination is "proper"—that is, where AboutGolf properly asserts a right to early termination pursuant to ¶ 19. AGI also asserts that ¶ 16(C) is unenforceable because Ohio courts do not enforce limitation of liability clauses where the party invoking the provision has committed a willful or reckless breach of contract, or where the limitation clause is unconscionable, vague and ambiguous or violates public policy considerations.

"The starting point in the interpretation of any contract are [*sic*] the express terms in the agreement." *Cardinal Stone Co. v. Rival Mfg. Co.*, 669 F.2d 395, 396 (6th Cir. 1982) (applying Ohio law). The limitation of liability clause in question bars claims arising from "termination or non-renewal of the agreement." The initial question thus is whether the term "termination" is limited to early termination as provided for by the agreement or whether it includes a wrongful termination—in other words, a breach of contract.

As noted above, the primary goal of contract construction is to give effect to the intentions of the contracting parties. *Kelly*, *supra*, 31 Ohio St. 3d at 132. AGI insists that the intent of the parties was to limit liability where AboutGolf terminated the agreement as permitted by ¶ 19, but not in all cases of termination.

AboutGolf argues that the purpose of the limitation of liability is "to prevent the same sort of sour grapes litigation that AboutGolf must currently endure." [Doc. 21, at 4].

AboutGolf argues that it makes no sense to premise the limitation of liability on a "proper" termination of the contract because a "proper" termination would not result in damages. Not so. Paragraph 19 of the agreement sets forth the conditions under which AboutGolf may terminate the agreement before the end of its term. This provision does not give AboutGolf unfettered right to terminate the agreement, but rather permits AboutGolf to end the agreement if AGI fails to perform

10

its obligations and to correct such failures on notice. A "proper" termination therefore does not preclude the possibility that AGI may suffer harm to its goodwill or loss of prospective profits, but merely prevents AGI from recovering such damages.

AboutGolf is correct that agreements to limit liability, even where one party is granted the right to terminate the contract at will, is on its face neither unconscionable nor violative of public policy. *See Cardinal Stone Co. v. Rival Mfg. Co.*, 669 F.2d 395, 396 (6th Cir. 1982) (applying Ohio law to enforce limitation of liability where party exercised contractual right to terminate agreement). Sophisticated parties like AboutGolf and AGI may contract to allocate liability.

This contract, however, did *not* grant AboutGolf an absolute right of unilateral termination. The limitation of liability applies, moreover, to damages "arising out of termination" rather than "arising out of breach of the agreement." AboutGolf may not enforce the limitation of liability unless it has itself abided by the terms of the agreement for early termination.

The limitation of liability clause thus only bars AGI's claims if AboutGolf's termination of their agreement accorded with the agreement's conditions for early termination. I therefore must determine whether AGI has stated a claim for improper termination of the distributor agreement.

### B. Sufficiency of the Pleading

### 1. Declaratory Judgment: Improper Termination

The first count of AGI's complaint seeks a declaratory judgment that AboutGolf does not have grounds to terminate AGI's distribution rights and therefore is in breach of contract. AGI does not challenge AboutGolf's right to terminate the agreement for the grounds it stated in its August 31, 2010 letter—namely AGI's failure to make timely payments and failure to satisfy the requirements of the distributor program. Rather, AGI asserts that these reasons were pretextual.

11

AGI claims that AboutGolf failed to indemnify AGI for customer service-related expenses in excess of $700,000, and because AboutGolf therefore owed AGI money, it could not terminate the contract for AGI's failure to make timely payments.

AboutGolf argues that AGI's claim is factually insufficient because the complaint lacks any allegation that AboutGolf's termination for failure to satisfy the requirements of the distributor program was pretextual or that AGI was entitled to offset any amounts owed by AboutGolf such that the termination was pretextual.

To state a breach of contract claim under Ohio law, a plaintiff must assert "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp*, 98 Ohio App.3d 597, 600 (1994). AboutGolf challenges the sufficiency of AGI's allegations of both AboutGolf's breach and AGI's performance.

AboutGolf can terminate the agreement if AGI fails to perform any of its non-monetary obligations or fails to make timely payments for products. The parties do not contest that these are the reasons AboutGolf gave for terminating the agreement.

AGI's complaint alleges that these reasons "are insufficient grounds to terminate the relationship." [Doc. 1, at 10]. This conclusory allegation is supported by neither facts nor a reasonable reading of the contract at issue.

AboutGolf cannot rely on the non-monetary obligations to justify the termination, because the contract allowed AGI thirty days to correct failure of performance on these grounds, and AboutGolf terminated the contract after twenty-two days notice.

12

The agreement entitled AboutGolf to terminate after ten days notice for failure to make timely payments. AGI does not allege that it made timely payments for products, but insists that it was entitled to offset its payments by the amount it claims AboutGolf owes it.

As AboutGolf points out, nothing in the contract allows AGI to offset payments it owed to AboutGolf against monies it claims AboutGolf owed it. Nothing in the agreement indicates that the parties contemplated, negotiated and agreed to this sort of self-help.[2] In ¶ 20, detailing the effects of termination, the parties specifically reserved their rights to any unpaid amounts:

> A. all amounts owing by Distributor to [AboutGolf] or by [AboutGolf] to Distributor shall remain payable under the terms of the sale and this Agreement

The agreement thus encompasses early termination even where AboutGolf owes money to AGI. Because AGI has not alleged that it made timely payments for products, it has not alleged either that AboutGolf breached the contract by exercising its right to early termination or that it has itself performed. AGI therefore fails to state a claim for breach of contract with regard to AboutGolf's termination of the distributor agreement.

---

[2] AGI relies on Ohio's Unified Commercial Code to support its claim that it may offset the damages from any payments due. O.R.C. § 1302.91 ("The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."). AboutGolf argues that even assuming the UCC governs this case, the provision applies to the proper measure of damages on a breach of contract claim rather than "a general set-off provision permitting a buyer of goods to adjust its continuing contract obligation according to equities perceived by the buyer." *Columbia Gas Transmission Corp. v. Larry H. Wright, Inc.*, 443 F. Supp. 14, 20 (S.D. Ohio 1977).I need not interpret whether the UCC allows AGI to deduct its alleged damages because AGI has not alleged that it notified AboutGolf of its intention to do so, nor is there anything in the complaint or in AboutGolf's notice to AGI implying it gave such notice.

## 2. Breach of Territorial Exclusivity Agreement

AGI's complaint alleges that AboutGolf engaged in discussions with UMB Communications, a competitor of AGI, as well as with other potential distributors regarding the sale of products in South Korea. AGI asserts that these conversations constitute breach of contract because AboutGolf infringed on the exclusive territory granted to AGI by the Distributor Agreement.

The Distributor Agreement granted AGI the "right to market, sell, install and service the Products exclusively" within South Korea. AboutGolf's conversation with potential successor distributors does not violate these rights. AGI therefore has not stated a claim for breach of contract. If, however, further discovery uncovers the use of a successor to distribute products in South Korea prior to the termination of the agreement, I would be inclined to allow AGI to refile.

## 3. Breach of Contract for Failure to Indemnify

AGI claims that AboutGolf has failed to indemnify it for defective products as required by the Distributor Agreement. AGI asserts that it has satisfied the claims of its customers at a cost exceeding $700,000 and that it has requested indemnification from AboutGolf.

AboutGolf argues that AGI failed to comply with the requirement that AGI notify it immediately of warranty-related defects, and therefore AboutGolf's indemnity obligation never arose.

The indemnification provision states:

[AboutGolf] agrees to protect [AGI] and hold [AGI] harmless from any loss or claim arising out of warranty-related defects in Products that exist at the time of delivery, *provided that [AGI] gives [AboutGolf] immediate notice of any such loss or claim and cooperates fully in the handling thereof.*

[Doc. 1-3, at ¶15] (emphasis added).

14

AGI is correct that whether a plaintiff followed the requirements necessary to secure indemnification would be a factual determination that generally should not be resolved through a motion to dismiss early in the litigation. And although AGI states that it resolved many of these complaints itself and "elected to later seek recovery from AboutGolf later [sic]"—apparently in direct violation of the requirements of the indemnity provision—AGI has alleged enough to imply that it followed the notice requirements in at least some situations. Viewing, as I must, all facts in the light most favorable to the plaintiff, I overrule the motion with regard to this claim. If AGI is not entitled to recover because it did not comply with the requirements for indemnification, AboutGolf may prevail on this defense on summary judgment.

### 4. Violation of the Ohio Deceptive Trade Practices Act

AGI asserts that AboutGolf violated the Ohio Deceptive Trade Practices Act (ODTPA), O.R.C. § 4165.01 *et seq.*, by selling "vaporware."

AGI relies on three provisions of ODTPA, O.R.C. § 4165.02(A)(7), (9) and (11), which provide:

> (A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
> [. . .]
> (7) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that the do not have [. . .];
> [. . .]
> (9) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
> [. . .]
> (11) Advertises goods or services with intent not to sell them as advertised

15

According to the complaint, AboutGolf represented that it was developing products and product enhancements that it knew or should have known would not be available by the dates it represented and were therefore vaporware at the time of the representation. AGI states that AboutGolf repeatedly encouraged AGI to promote these products, and that AGI did so. AGI asserts that AboutGolf made its misrepresentations with malice and that AGI has suffered damages resulting from the misrepresentations.

AboutGolf argues that AGI's pleading is insufficient because it fails to allege a characteristic, use, benefit or quality that AboutGolf's products did not have. AboutGolf also states that AGI cannot show damages as "the express language of the limitation of liability provisions prohibits Plaintiff from recovering any conceivable type of damages." [Doc. 14, at 25].

The complaint states that AboutGolf represented to AGI that its products would have certain capabilities available within the term of the agreement, that AboutGolf knew or should have known such representations were false, and that AGI repeated these representations to its customers and thereby incurred damages. The allegations in the complaint state a plausible claim under ODTPA. The limitation of liability provision does not apply because the damages alleged are neither indirect nor arise out of the termination or non-renewal of the agreement.

AboutGolf also accuses AGI of gamesmanship, as AGI willingly continued its relationship with AboutGolf even after the products and enhancements failed to materialize. But it is a common fact of commercial life that parties continue working together despite problems—especially problems with software. AGI's unwillingness to abandon its investment, while possibly a mitigator regarding damages, does not preclude its suit.

16

**5. Fraud**

AGI's fraud claims arise out of the same facts giving rise to its ODTPA claims. AboutGolf argues that AGI has failed to state a claim because the limitation of liability provision prevents AGI from pleading recoverable damages and because the claims are predicated on promises or representations of future events.

As discussed above, the limitation of liability provision does not bar the fraud claims, as the damages alleged are neither indirect nor arising out of termination or non-renewal of the agreement.

Generally, fraud claims based on representations of future actions fail as a matter of law. But a plaintiff may prevail on a claim of promissory fraud by proving the defendant made a promise without the present intention of performing it. *Langford v. Sloan*, 162 Ohio App. 3d 263, 268 (2005). AGI has alleged such an intent.

AboutGolf challenges the sufficiency of the pleading, arguing again that AGI's fraud claims are inconsistent with its decision to renew the distribution agreement in 2009 and 2010. Contrary to AboutGolf's protestations, I find AGI has pled the circumstances constituting the fraud with sufficient particularity, and its choice to renew the contract does not affect the sufficiency of its pleading.

**6. Promissory Estoppel**

AGI's claim of promissory estoppel rests on the same promises regarding the completion of the six products that form the basis of its ODTPA and fraud claims. AGI also alleges that AboutGolf promised a long-standing business relationship.

AboutGolf challenges the sufficiency of the pleading, charging that the "complaint contains four conclusory paragraphs but not a single fact." AboutGolf argues that the alleged promises are

"mere representations of future conduct without more specificity [and therefore] do not form a valid basis for the application of the doctrine of promissory estoppel." *Daup v. Tower Cellular, Inc.*, 136 Ohio App. 3d 555, 563 (2000). AboutGolf asserts again that the limitation of liability bars any relief. Finally, AboutGolf argues that the parties' relationship is governed by the distributor agreement and therefore the equitable doctrine of promissory estoppel is unavailable.

To state a claim for promissory estoppel under Ohio law, a plaintiff must plead: 1) a clear and unambiguous promise; 2) reliance by the party to whom the promise was made; 3) reasonable and foreseeable reliance; and 4) injury resulting from the reliance. *Patrick v. Painesville Commercial Properties Inc.*, 123 Ohio App. 3d 575, 583 (1997).

AboutGolf bases its *Iqbal-Twombly* challenge on a misreading of the complaint. Count Six, like every count in the complaint, restates the averments of the rest of the complaint. I find that plaintiff has made more than naked assertions. As AGI summarizes,

> First, Action Group has pled that AboutGolf made clear and unambiguous promises regarding the completion, release, qualities, and capabilities of at least six distinct products or features. (Complaint at ¶¶27-45.) Action Group has also pled that AboutGolf promised a longstanding business relationship with Action Group. (Complaint at ¶8.) Second, Action Group has alleged that it relied on AboutGolf's promises by marketing and selling AboutGolf's vaporware and by entering into successive distributor contracts with AboutGolf. (Complaint at ¶¶5-7, 26, 28, 31, 34, 37, 40, 43, 90.) Third, not only has Action Group pled that its reliance was reasonable and foreseeable, but it has also alleged that AboutGolf encouraged such reliance. (Complaint at ¶¶26, 90) Finally, Action Group has pled injury (Complaint at ¶¶29, 32, 35, 41, 44, 45, 91).

The alleged promises regarding product development are not "mere representations of future conduct without more specificity"—AboutGolf's promises were product-specific and included anticipated dates of release. Considering that the term of each of the agreements between the parties

18

was just one year, such alleged promises are not mere representations of future conduct. AGI's vaporware allegations state a claim for promissory estoppel.

The same is not true, however, with regard to claims based on statements about a long-term business relationship. Each one-year agreement is comprehensive and contains an integration clause providing that the agreement:

> constitutes the entire agreement between [AboutGolf] and Distributor with respect to the subject matter of this Agreement and supersedes all prior understandings between them, whether written or oral. This Agreement may be modified only by a further writing that is duly executed by both parties.

[Doc. 1-3, ¶ 22].

AboutGolf thus correctly asserts that the agreement governs the term of the parties' business relationship. Any representations about a long-term relationship are not actionable.

Moreover, the limitation of liability bars damages arising from the termination or non-renewal of the contract. AGI's claim of promissory estoppel based on AboutGolf's promise of a long-standing business relationship is dismissed.

### 7. Unjust Enrichment

AGI's claim of unjust enrichment stems from its investment of "a massive amount of resources and time to develop the recognition of AboutGolf's products in South Korea." [Doc. 1, at

15]. AGI states that by ending the relationship, AboutGolf was unjustly enriched by ActionGroup's "uncompensated efforts" in South Korea. *Id.*

Under Ohio law, unjust enrichment applies when one party confers some benefit upon another without receiving just compensation for the reasonable value of the services rendered. *Aultman Hosp. Assn. v. Cmty. Mut. Ins. Co.*, 46 Ohio St. 3d 51, 55 (1989). But where a valid

contract exists between the parties, there can be no recovery under a theory of unjust enrichment in the absence of fraud, bad faith, or illegality. *Id.*

The distribution agreement bars AGI's claim of unjust enrichment. The term of each of the agreements was limited to one year without any promise of renewal, and the 2010 agreement gave AboutGolf the right to terminate the agreement early if AGI failed to abide by its obligations. The loss of the time and resources AGI spent to develop product recognition in South Korea is a risk obviously apparent in a one-year distributor agreement.

Moreover, the limitation of liability provision specifically contemplates this type of claim: AboutGolf "shall not be liable for any claim of any kind arising from (C) termination or non-renewal of this Agreement for loss of present or prospective profits, compensation on sales or anticipated sales, or *in connection with the establishment, development, or maintenance of Distributor's business.*" [Doc. 1-3, ¶ 16] (emphasis added).

The court's comments in *Ullmann v. May*, 147 Ohio St. 468, 476 (1947), apply here:

> That the terms of the agreement appear (and may work out to be) harsh may be admitted, but unless there is fraud or other unlawfulness involved, courts are powerless to save a competent person from the effects of his own voluntary agreement. In other words, courts do not relieve competent parties from an improvident agreement.

Defendant's motion to dismiss the unjust enrichment claim is well taken.

### 8. Tortious Interference with Business Relationships

AGI asserts that by its actions and without justification, AboutGolf has tortiously interfered with AGI's business relationships with customers and others.

To state a claim for tortious interference with business relationships, a plaintiff must show that "a person, without privilege to do so, induces or otherwise purposely causes a third person not

20

to enter into or continue a business relation with another, or not to perform a contract with another." *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St. 3d 1, 14 (1995).

AGI has not alleged that AboutGolf induced or otherwise purposely caused customers and others not to enter into or continue business relations with AGI. While AboutGolf's alleged misrepresentations regarding product development may have indirectly led to AGI losing customers, this allegation does not support a tortious interference with business relationships claim.

AGI points to AboutGolf's communication with UMB Communications as preventing AGI from acquiring a prospective business relationship. But AGI does not allege that AboutGolf actually sold any product to UMB Communications for distribution in South Korea. According to the complaint, UMB Communications is a competitor of AGI, not an end-user of golf simulation devices. Even assuming that UMB Communications would have entered into a business relationship with AGI as a sub-distributor, the distributor agreement requires the express written consent of AboutGolf for such an arrangement. [Doc. 1-3, ¶ 3(K), (I)]. AboutGolf therefore would have had the privilege to prevent a business relationship between AGI and UMB.

AGI fails to state a claim for tortious interference with business relationships.

### Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT defendant AboutGolf's motion to dismiss [Doc. 14] be, and the same hereby is:

- Granted as to plaintiff's claims for improper termination, breach of territorial exclusivity, unjust enrichment and tortious interference with business relations; and

- Denied as to plaintiff's claims for breach of warranty, violations of Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.01, *et seq.*, fraud, and promissory estoppel.

- Scheduling Conference set for May 9, 2011, at 11:30 AM.

So ordered.


s/James G. Carr
Sr. U.S. District Judge